CaRüthees, J.,
delivered tbe opinion of tbe court.
John "Walls, in bis lifetime, executed, acknowledged and committed to l'egistration, in tbe county of Rutherford, an instrument in the following words:
“Know all men by these presents that I, John Walls, of the county of Rutherford, State of Tennessee, in consideration of the natural love and affection I bear my children, Solomon, Ryland, Hiram and Malinda Walls, have transferred and conveyed unto them the following slaves for life, namely: Green, Clem, Harry, Edmund and Nancy and her increase. To have and to hold said slaves unto tbe said children, their heirs and assigns, to take effect at the termination of my natural life, I retaining the property of said slaves during my life. Witness my hand and seal this 1st day of April, ] 840. JohN Walls, [seal.] ”
*650 Defendant, Ward, bought the interest of some of the children, and by a division of the slaves made by the chancery court at Trenton, in 1849, the negro boy, Green, was assigned to him. This was after the death of John Walls.
This bill is filed by the administrator claiming the boy, Green, upon the gi'ound that the above instrument is a testamentary paper, and consequently that this, and the other slaves belonged to his intestate at the time of his death, and are subject to the regular course of administration, the payment of debts, &c.
It may be remarked that there are no creditors before the court, and in this suit we cannot know that any exist. We can only consider it as a contest between the personal representative of Walls, and one claiming under his deed. The deed, then, must operate against the complainant just as it would against his intestate,, so far as the rights of those claiming under it are affected. There being no creditors or subsequent purchasers in this suit, proposing to contest the validity of this title, it is to be considered as a suit by the donor himself. He must be bound by the express words of his deed. And his administrator standing in his shoes, has no other rights than those possessed by his intestate at the time of his death. Then, as by the express words of his deed, the title of the donees “is to take effect” at his death, he only “retaining the property of said slaves’’ during his life; what right or property was there left to pass to cm administrator? Very different questions might arise in favor of creditors, or subsequent purchasers. Whether they could prevail against the title of defendant 'derived under this deed, would depend upon circum *651 stances, wliicli do not appear in tliis record, and' upon which we give no opinion.
But the ground upon which this suit is placed by the complainant, is, that the deed of his intestate, ■■ can only be regarded as a testamentary paper, and therefore conveys no title as against creditors, but can only take effect after they are satisfied; that the children can only claim as legatees, and not as donees of the remainder. Perhaps the answer already given, that the complainant, as administrator, cannot make that question, as the law was when this suit was brought, would be sufficient. The administrator must take up the rights of his intestate as he finds them, and cannot disregard his conveyances of property, even for fraud, either in law, or in fact. But, if this . paper were regarded as a will, it would, by no means, follow, that the conxplainant, as administrator of an intestate, could prevail. It is said that this instrument, be it what it may, disposes of all the property of the deceased. It is here presented, duly authenticated, as a deed, and acknowledged on all hands, to be the act of John "Walls. The title either passed out of him to the remainder in this property, at the date of the deed, according to the construction of defendant, or it passed under the paper as a will, as contended by complainant’s solicitor. Now, the complainant’s rights rest entirely upon the faet of -an intestacy. He is not executor, or administrator with the will annexed. If it be a will, it is believed that no one can recover the property disposed of by it, unless he is legally appointed to act under it, or be a creditor, or purchaser, or claim under a title hostile to that of the deceased. Here, the very ground upon which the complainant claims, is, that Walls made a will bequeathing this property to his children, and *652 yet, liis right to recover as administrator, or to administer at all, rests solely upon the fact that be made no will, but died intestate; It will be observed, that the validity of this paper is n<?t controverted on either side. It is admitted to be good as a deed, or a testament. The complainant does not insist that it is invalid; but that being a testament, by legal construction, it only carries the title to the property subject to the debts. It is no sufficient answer to this view of the case, that it is no bar to the recovery of complainant, as administrator, because it has not been proved as a will. The law provides a mode, by which any one interested in its probate, if it be a will, may coerce its production for that purpose ; act 1794, ch. 1, § 47. Although it may be true, that no one could assert any rights under it, as a will, without probate, yet we think that its production, under the circumstances of this case, is sufficient to defeat the complainant’s right of recovery. It is, in form, a deed; proved and 'registered as such; was so intended by the maker, and its character can only be changed, if at all, by construction of law. This change cannot be made by Walls, or complainant, if it could by others.
But we do not consider it a testamentary paper. It could not have been so intended by the maker. His object certainly was, to make an absolute conveyance of the slaves, subject to a life estate in himself. The donees are “to have and to hold said slaves” unto them, their “heirs and assigns.” Tet it is to take effect at the termination of the donor’s “ natural life,” and he “ retains the property of said slaves during his life.” Although such is not the literal import of these restrictive words, yet, taken in connection with the whole instrument, they can only mean that the use of the slaves during his life, is *653 reserved. Any other construction would place it in his power to defeat the gift entirely, by giving, selling, or willing them to others. He certainly intended to secure the property, after his death, to the designated objects of his bounty, and not to mock them with false hopes. To give the paper immediate effect, and make clear his intention, he acknowledged, and had the paper registered, according to the requisitions of the law, on the subject of deeds of gift. No ground is left for creditors to complain, because the deed was made public by registration. Since the case of Caines & Wife vs. Marley, 2 Yerger, 582, decided in 1831, by this court, the law has been well settled to be, that “ a deed of gift of slaves, to take effect after the death of the donor, is valid,” and that “ the delivery of possession is not essential to the validity of a gift, where the gift is evidenced by writing.” In Cains vs. Jones, 5 Yerger, the same rule is recognised.
The English law, of former times, to the contrary, in relation to personal property, by which the entire interest went with the life estate, because a remainder could not be created in personal property, has long since been changed, both there and here; 2 Yerger, 583; 2 Kent’s Com., 258. The law being clear, then, that a remander may be limited on a life estate, or that the reservation of a life estate, or the use for life, in a deed conveying the remainder to another, is good and valid in law, the only difficulty arises from the application of the principle to a particular deed.
It is here argued, that it does not apply to this case, because the gift is not to take effect till the death of the donor, and that he retains the property, as well as the use, for life. Therefore, it is contended, that no property vested in the donees till the death, and con *654 sequently the instrument can only take effect as a will. We cannot concur in this construction; it is only a difference in words, and not in ideas. The writer of the deed must be taken to have meant by the language ixsed, to convey a present right to the remainder to his children. The right to the property was then given and vested, but not to take effect in possession, nor to be beneficially enjoyed until his death. This is the plain, common sense meaning of the instrument; the evident intention of the donor; and is not, we think, in conflict with any technical rule of law. The contrary construction would make' the deed contradictory and absurd. By it, the deed would be made to give a complete right to the property to the donees, in the body of it, and then reserve the w'hole property to himself in a subsequent clause. This would make the latter clause void according to the rule of law applying to the construction of deeds; which is, that where there is an irreconcileable conflict between a prior and subsequent clause, the latter must fall and the former stand. The maker of a deed will not be allowed to say: “I inserted a clause, or condition, destructive to your supposed title, and you take nothing;” 5 Yerger, 254; 4 Cru. D., 329; Martin’s N. C. R., 28; 2 Yerger, 584.
The case of Watkins vs. Dean, 10 Yerger, 321, is a fair illustration of that class of cases to which the doctrine contended for by complainant’s counsel, applies. The principle there decided, is, that an instrument which does not purport to convey any property of which the maker was owner at its date, but gives the one half, as in that case, or any other proportion, or all the property which he may own at his death, is, although in *655 form, a deed, testamentary in its character, and can only operate and take effect as a will. But, in the case before us, the property was then in possession, and described; and the donees in being, and named; the paper in form, a deed, intended to take effect as such, duly proved and registered. Nothing is relied upon to change its character, but the fact that no benefiqial interest passed until the termination of a life. To carry the doctine on the subject of converting papers, not so intended, into wills, by construction, would be tantamount to a negation of the right to create a remainder in property, to be enjoyed after the death of the owner. This right is well settled, and where it is exercised in good faith, should be favored, as it often tends to preserve property to children, which would otherwise be wasted by unthrifty parents, who are generally induced to make such settlements under some strong equity, as in the case now before us.
The decree must be reversed, and the bill dismissed.